separate from its own property, and Company shall immediately deliver the same in kind properly endorsed to Factor. Factor may endorse Company's name on any check, instrument, draft or other document in payment of an Account Receivable. Any payments made to either Company or Factor from, or credits issued to, a Customer shall be applied first to the Factor Risk Accounts Receivable owing by such Customer, irrespective of instructions of the Customer or the invoice dates of such Factor Risk Accounts Receivable or the manner in which payment is made, and Factor shall have recourse to Company to the extent any such payment is made directly to Company.

13.    *Commissions.*  Company agrees to pay Factor a commission of two percent (2%), in the form of a discount on the face amount of each Factor Risk Accounts Receivable or Company Risk Accounts Receivable for the first thirty (30) days or part thereof that such Account Receivable is outstanding.  In no event, however, shall the commission payable for each invoice be less than $7.00.  All commissions due hereunder shall be payable by debit to the Reserve Account.  After the first thirty (30) days that any portion of a Factor Risk Accounts Receivable or Company Risk Accounts Receivable has not been Closed and until such Account Receivable is Closed, the commission due to Factor shall be one percent (1%) for each additional fourteen (14) day period, or portion thereof that such Account Receivable is outstanding, and shall be earned on the first day of such period.  The minimum commissions to be earned by Factor under this Agreement for (i) the first year of this Agreement, commencing the date hereof shall be $103,400, and (ii) the second year of this Agreement, commencing on the first anniversary date hereof shall be $170,000, (each, a "Minimum Commission").  The difference between the Minimum Commissions and the amount of commissions actually received shall be chargeable to the Reserve Account as of the end of each such year (or, if this Agreement is terminated for any reason before the Anniversary Date, as of the date of such termination).

14.    *Refactoring.*  The Company acknowledges and agrees that the Factor may, from time to time, reassign and resell any Account Receivables and the Collateral to: (i) CIT Commercial Services, Inc. or any of its successors in interest; (ii) any other factor; or (iii) such other business entity as Factor in its sole discretion may determine (any such entity collectively and severally referred to herein as the "Refactor").  Pursuant to the terms and conditions of agreements entered into with such Refactor from time to time (the "Refactoring Agreements"), the Company hereby consents to any such resale, reassignment and hypothecation. Company agrees that all agreements, representations, warranties and covenants made by it hereunder shall be deemed to be made both to the Factor and the Refactor, jointly and severally as the context may require and that the term "Factor" as used throughout this Agreement shall in all instances be interpreted to mean "either the Factor or the Refactor or both of them."  The Company agrees that (i) this Agreement is and shall at all times be subject to the terms, provisions and covenants of the Refactoring Agreements which may now or hereafter affect this Agreement and to any renewals, modifications, replacements or extensions thereof; and (ii) the Refactor may exercise all of the Factor's rights and remedies hereunder whether or not such rights or remedies have been specifically granted herein to the Refactor.  The Company covenants and agrees that the Refactor, its employees and its agents shall not be liable to it for any act, omission, breach or violation on its part or on the Factor's part with respect to performance or non-performance of any of the terms and provisions of the Refactoring Agreements, and with respect to performance or non-performance of any of the terms and provisions of this Agreement, or any other agreement between the parties hereto and any indebtedness owing by the Factor to the Company

of any kind or nature whatsoever, if any, and that the Company shall look solely to the Factor for enforcement of its rights under this Agreement and the Reassignment Agreements.

15. *Financial Statements and Information; Inspections.*

15.1 Company shall furnish Factor with annual financial statements prepared by an independent accountant acceptable to Factor and also furnish on a timely basis interim financial statements and other financial information upon Factor's request.

15.2 Factor shall have the right at any time to access, review and copy, at Company's expense, all records and documents relating to any Collateral, and to access and utilize computer hardware and software and other data processing systems used by Company. Company shall maintain, and shall furnish to Factor on request, such other supporting documents and reports with respect to the Factored Accounts as Factor may reasonably request from time to time. If any of Company's records or reports in respect of reporting any of the foregoing information are prepared by an accounting service or other agent, Company hereby irrevocably authorizes such service or agent to deliver such records, reports and related documents to Factor, and such accounting service or agent may rely upon a copy of this Agreement as evidencing such authorization without necessity of notice to or further consent by Company.

15.3 Company shall permit any representative of Factor to visit and inspect any of the properties of Company, to examine all books of accounts, records, reports and other papers, to make copies and extracts therefrom, and to discuss the affairs, finances and accounts of Company with its officers, employees, independent public accountants, creditors and depository institutions all at such reasonable times and as often as may be reasonably requested. Company agrees to do all things necessary or appropriate to permit Factor to fully exercise its rights under this Section 15.3.

16. *Financial Condition.* Company warrants that it is Solvent and shall remain Solvent during the term of this Agreement; that any financial statements delivered to Factor accurately and fairly state Company's financial condition; that there has been no material adverse change in Company's financial condition as reflected in the statements since the date thereof nor do the statements fail to disclose any fact or facts which might materially adversely affect Company's financial condition; and there is no litigation pending or threatened, which taken in the aggregate if adversely determined, can reasonably be expected to have a material adverse affect on Company's financial condition.

17. *Term of Agreement; Termination.*

17.1 This Agreement shall take effect on the date of acceptance by Factor and shall remain in full force and effect until terminated: (a) by Company at any time upon the giving of not less than thirty (30) days prior written notice of termination to Factor or (b) by Factor at any time upon the giving of not less than thirty (30) days prior written notice of termination to Company, or, (c) without notice if any of the following events (each, an "Event of Default") shall occur: (i) Company shall default in the payment of any of the Obligations on the due date thereof (whether due at stated maturity, on demand, upon acceleration or otherwise); (ii) any representation or warranty made in this Agreement or any supplement hereto, or in any other

document executed in connection herewith, or any instrument, certification or financial statement furnished in compliance with or in reference hereto or thereto, or in any other agreement between Company and Factor, shall prove incorrect or misleading in any material respect when made or furnished; (iii) Company shall fail or neglect to perform, keep or observe any covenant or agreement contained in this Agreement or any supplement hereto or any other agreement between Company and Factor; (iv) Company or any guarantor of the Obligations shall file or have filed against it a petition, answer or consent seeking relief under Title 11 of the United States Bankruptcy Code, as now constituted or hereafter amended, or any other applicable Federal or state bankruptcy law or other similar law, or a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official shall be appointed for Company or any guarantor of the Obligations or any substantial part of its or his property; (v) the occurrence of any event or condition which, alone or when taken together with all other events or conditions occurring or existing concurrently therewith, Factor determines (1) has or may be reasonably expected to have a material adverse effect upon Company's business, operations, properties, condition (financial or otherwise); (2) has or may be reasonably expected to have any material adverse effect whatsoever upon the validity or enforceability of this Agreement or any other agreement between Company and Factor; (3) has or may be reasonably expected to have any material adverse effect upon any security for the Obligations, Factor's liens therein or the priority of such liens; or (4) materially impairs the ability of Company to perform its Obligations under this Agreement or any other agreement between Company and Factor, or the ability of Factor to enforce and collect the Obligations or realize upon any of the security for the Obligations in accordance with the terms of this Agreement or any other agreement between Company and Factor or applicable law; (vi) Company is no longer Solvent, or fails, closes, suspends, or goes out of business; or (vii) there is a change (by death or otherwise) in Company's principal stockholders or owners. In the event that this Agreement is terminated by Company prior to an Anniversary Date, Factor shall be entitled to the unpaid portion of the minimum factoring commissions which would have been payable to Factor pursuant to Section 13 of this Agreement through such Anniversary Date.

17.2    Company shall indemnify Factor and hold Factor harmless from and against any liability, loss, damage, suit, action or proceeding ever suffered or incurred by Factor (including reasonable attorneys' fees and expenses) as the result of Company's failure to observe, perform or discharge any of its Obligations or duties hereunder or under any Factoring Agreement. In addition, Company shall defend Factor against and save Factor harmless from the actions, demands or claims of any Person with respect to any of the Factored Accounts or any of the other Collateral, except any such actions, demands or claims directly arising from Factor's willful misconduct or gross negligence.

17.3    In the event that this Agreement is terminated by Company or by Factor as a result of an Event of Default prior to an Anniversary Date, Factor shall be entitled to the unpaid portion of the minimum factoring commissions which would have been payable to Factor pursuant to Section 13 of this Agreement through such Anniversary Date.

18.    *Effect of Termination.*  Upon the effective date of termination, all Obligations of Company to Factor shall become immediately due and payable without further notice or demand irrespective of any maturity dates established prior thereto. However, no such termination shall release or abrogate any security interest held by Factor in any collateral of Company until all of

Company's Obligations to Factor, including commissions, interest and all costs, expenses and attorneys' fees as herein provided, are paid in full. In the event that Factor shall cease to act as factor for Company, Company agrees to furnish Factor with indemnity satisfactory to Factor that will protect Factor against possible charges to Company under the terms of this Agreement and with a release satisfactory to Factor of all claims Company may have against Factor and until Company does so, Factor may hold any balance remaining to Company's credit in the Reserve Account as security for all Obligations of Company to Factor. Company shall pay Factor upon demand all costs and expenses, including reasonable attorneys' fees, incurred by Factor to obtain or enforce payment of any Obligations due from Company to Factor or in the prosecution or successful defense of any action or proceeding concerning any matter arising out of or related to this Agreement, the factoring of the Company's Accounts Receivable by Factor, or any Obligations owing by Company to Factor.

19.   *Lien Perfection.* Company agrees to execute and deliver to Factor all financing statements provided for by the Uniform Commercial Code and all other documents or instruments which may be required by law or which Factor may request to perfect its first priority security interest hereunder and to cooperate with Factor in the filing, recording or renewal thereof, and to pay all filing and recording fees and expenses related thereto, and Company authorizes Factor and any Person whom Factor designates as Company's attorney with power to sign Company's name thereon. This power being coupled with an interest is irrevocable as long as Company is indebted to Factor in any manner. Company shall execute, acknowledge and/or deliver such other Instruments as assurances as may reasonably be requested to effectuate the purposes of this Agreement. At Factor's option, this Agreement may be filed as a financing statement.

20.   *Preferences.* Company shall indemnify and hold Factor harmless from any loss, damage or expense (including attorneys' fees) incurred by Factor as a result of a claim made at any time against Factor for the repayment or recovery of any amount received by Factor in payment of any Company Risk Account Receivable by the payor or legal representative thereof (including a trustee in bankruptcy or assignee for the benefit of creditors) on the grounds of preference under the provisions of the Bankruptcy Code or any other federal or state insolvency law. If such claim is ever made against Factor, in addition to all of Factor's other rights under this Agreement, Company shall pay to Factor on demand the full net face amount of any such Company Risk Account Receivable, or if Factor so elects, Factor shall have the right to charge against the Reserve Account the full net face amount of any such Company Risk Account Receivable, but such charge back shall not be deemed a reassignment thereof. The provisions of this Section 20 shall survive the termination of this Agreement and the payment in full of the Obligations.

21.   *Notices.* Any notices, demands, consents, or other writings or communications permitted or required by this Agreement shall be given by facsimile transmitter, overnight air courier or certified mail, return receipt requested, addressed to the party to be notified as follows:

(a)   If to Factor:     Capstone Business Credit, LLC
1350 Avenue of the Americas, 24th Floor
New York, NY 10019
Facsimile No.: 212-755-6833

*Capstone Business Credit, LLC*
BN 1154695v4                     12

    (b)    If to Company:    D'Annunzio Showcase Dealers, Inc.
    60G Commerce Way
    Totowa, NJ 07512
    Facsimile No.: 973-237-0444

or to such other address as each party may designate for itself by notice given in accordance with this Section 21. Any written notice or demand that is not sent in conformity with the provisions hereof shall nevertheless be effective on the date that such notice is actually received by the noticed party.

    22.    *ACH Authorization.* In order to satisfy any of the Obligations, Factor is hereby authorized by Company to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Company wherever located.

    23.    *Miscellaneous.* This Agreement, together with any supplement hereto, contains the entire agreement between the parties, and cannot be modified, altered, changed or amended orally. This Agreement is intended solely for the benefit of Factor and Company, and no other person or party (including any guarantor), is intended to be benefited hereby in any way. The captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. Failure of Factor to exercise any rights granted to it hereunder upon any breach or default by Company shall not be deemed a waiver thereof in the event of further breaches or defaults. The remedies of Factor hereunder shall be deemed to be cumulative and not exclusive. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns and shall become effective only from the date of Factor's written acceptance. This Agreement is made and accepted and shall be construed, interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles, and Company irrevocably consents and submits to the jurisdiction of state courts of, and federal courts in, the State of New York, for the purpose of any suit, action or proceeding relating hereto.

    24.    *WAIVER OF JURY TRIAL.* TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FACTOR AND COMPANY HEREBY WAIVE, IRREVOCABLY AND UNCONDITIONALLY, TRIAL BY JURY IN ANY ACTION BROUGHT ON, UNDER OR BY VIRTUE OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR ANY SUPPLEMENT HERETO OR ANY OF THE OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR ANY CLAIM, DEFENSE, RIGHT OF SETOFF OR OTHER ACTION PERTAINING HERETO, OR TO ANY OF THE FOREGOING.

    25.    *Electronic Data Transmission.* Factor may authorize Company to send to Factor or receive from Factor assignments, invoices, credit memoranda, credit approval requests, credit approvals, and other reports to be delivered to or transmitted by Factor under this Agreement by electronic means (each, an "Electronic Transmission"). Any documents authorized by Factor to be sent by Electronic Transmission shall be deemed (a) to have been transmitted by a Person duly authorized to do so, and (b) to have been received by the Person for whom such documents were intended on the actual date of receipt of such documents, unless such day is not a business day, in which event such documents shall be deemed to have been received on the first business

day following actual receipt. Each party may rely upon, and assume the authenticity of, any signatures contained in any documents Factor authorizes to be transmitted by Electronic Transmission, and such signatures shall have the same effect and weight as original signatures and shall be sufficient to satisfy the requirements of the Uniform Commercial Code or any applicable statute, rule of law, or rule of evidence. Electronic Transmissions which are not readily capable of bearing either a signature or a reproduction of a signature (e.g., e-mail transmissions) shall be deemed signed, for purposes of the Uniform Commercial Code and all other rules of law and evidence, if they contain the name or an abbreviation of the name of the party sending the Electronic Transmission, it being agreed that such name or abbreviation serves as a symbol adopted by the sender with the intent to authenticate such writing. On the request of either party, the other party shall immediately confirm the receipt of any documents transmitted by Electronic Transmission. The sender of any documents transmitted by Electronic Transmission shall maintain backup paper documents for such documents until at least the third anniversary of the date of the termination of this Agreement and shall, on request of the receiving party, furnish such backup paper documents within two business days of the receipt of a request therefor. Each party may rely upon documents authorized by Factor to be sent by Electronic Transmission to the same extent as if original documents had been personally delivered.

26. **Fees.** Company agrees to remit to Factor:

26.1    The fees set forth herein in the amounts and on the dates set forth herein, and authorizes Factor to collect such fees on their respective due dates by charging Company's Reserve Account;

26.2    Any Misdirected Payment Fee immediately upon its accrual;

26.3    The Missing Notation Fee on any invoice that is sent by Company to a Customer which does not contain the notice as required by Exhibit B hereof;

26.4    Any charges or expenses charged by Factor for any Factor Risk Accounts Receivable or Company Risk Accounts Receivable where the account debtor is located in a country other than the United States;

26.5    All past due amounts due from Company to Factor hereunder; and

26.6    The out-of-pocket expenses directly incurred by Factor in the administration of this Agreement such as wire transfer fees, postage and audit fees. Company shall not be required to pay for more than four audits per twelve-month period unless an Event of Default has occurred.

27.    **Special Covenants.** For so long as any of the Obligations are outstanding, Company covenants that, unless otherwise consented to by Factor in writing, it shall comply with the covenants set forth in **Schedule A** attached hereto.

28.    **Clearance Days.** For all purposes under this Agreement, Clearance Days will be added to the date on which Factor receives any payment.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

D'ANNUNZIO SHOWCASE DEALERS, INC.

By: _____
Name:  Arthur D'Annunzio
Title:  President

Accepted by Factor:

CAPSTONE BUSINESS CREDIT, LLC

By: _____
Name:  Joseph Ingrassia
Title:  Managing Member

EXHIBIT A
to
Factoring Agreement

1.   Description of Collateral:

(a)   All inventory and goods, including without limitation, all inventory and goods held for sale or lease or to be furnished under contracts of service, raw materials, work in process, finished goods, goods in transit, advertising, packaging and shipping materials, and all designs, creations, patterns, styles, samples and all other material and supplies (collectively, the "Inventory");

(b)   All documents, including without limitation, documents of transport, payment and title relating to any of the foregoing and all such other documents as are made available to Company for the purpose of ultimate sale or exchange of goods or for the purpose of loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with goods in a manner preliminary to their sale or exchange;

(c)   All rights, claims, rights of offset, rights of return, actions and causes of action against any Person, including without limitation, those arising out of the purchase by Company of any of its Inventory including, without limitation, the supplier orders, and all rights of stoppage in transit, replevin, reclamation and rights of any unpaid vendor or as a lienor;

(d)   All equipment, machinery, fixtures, trade fixtures, vehicles, furnishings, furniture supplies, materials, tools, machine tools, office equipment, appliances, apparatus, dies, jigs, and chattels, trucks, trailers, loaders and other vehicles and all replacements and substitutions therefore and all accessories thereto;

(e)   All of Company's now owned or hereafter acquired General Intangibles, including, without limitation, trademarks, tradenames, tradestyles, trade secrets, equipment formulation, manufacturing procedures, quality control procedures, product specifications, patents, patent applications, copyrights, registrations, contract rights, choses in action, causes of action, corporate or other business records, inventions, designs, goodwill, claims under guarantees, licenses, franchises, tax refunds, tax refund claims, computer programs, computer data bases, computer program flow diagrams, source codes, object codes and all other intangible property of every kind and nature;

(f)   All of Company's now owned or hereafter acquired Accounts and contract rights, Instruments, insurance proceeds, Documents, Chattel Paper, letters of credit and Company's rights to receive payment thereunder, any and all rights to the payment or receipt of money or other forms of consideration of any kind at any time now or hereafter owing or to be owing to Company ("Receivables"), all proceeds thereof and all files in which Company has any interest whatsoever containing information identifying or pertaining to any of Company's Receivables, together with all of Company's rights to any merchandise which is represented thereby, and all Company's right, title, security and guarantees with respect to each Receivable, including, without limitation, all rights of stoppage in transit, replevin and reclamation and all rights as an unpaid vendor;

A-1

(g)   All of Company's now owned and hereafter acquired investment property, including, without limitation, securities (whether certificated or uncertificated, securities entitlements, securities accounts, commodities accounts, and commodities contracts;

(h)   All representations, liens on real or personal property, leases and other agreements and property which in any way secures or relates to the foregoing, or are acquired for the purpose of securing and enforcing any item thereof;

(i)   (1) all cash held as collateral to the extent not otherwise constituting collateral, all other cash or property at any time on deposit with or held by Lender for the account of Company (whether for safekeeping, custody, pledge, transmission or otherwise), (2) all present or future deposit accounts (whether time or demand or interest or non-interest bearing) of Company with Lender any other Person including those to which any such cash may at any time and from time to time be credited, (3) all investments and reinvestments (however evidenced) of amounts from time to time credited to such accounts; and (4) all interest, dividends, distributions and other proceeds payable on or with respect to (x) such investments and reinvestments and (y) such accounts;

(j)   All Instruments, Chattel Paper, Documents, and contract rights and other rights, irrespective of when acquired; and

(k)   All proceeds, insurance proceeds, products and accessions of or to any and all of the foregoing, and all collateral and security for, and guarantees of, any and all of the foregoing, and all books and records relating to any and all of the foregoing (including without limitation, any and all microfilm, microfiche, computer programs and records, source materials, tapes and discs) and all equipment containing said books and records.

EXHIBIT B
TO
FACTORING AGREEMENT

"This invoice has been sold and assigned to CAPSTONE BUSINESS CREDIT, LLC ("Company"), and has been reassigned by Company to The CIT Group/Commercial Services, Inc., by whom it is now owned and to whom it is exclusively payable at the following address:

The CIT Group/Commercial Services, Inc.
POST OFFICE BOX 1036
Charlotte, NC 28201-1036

Prompt notice must be given to The CIT Group/Commercial Services, Inc., of any merchandise returns and any claims or disputes whether based on shortages, non-delivery, offsets or any other claim."

**EXHIBIT C**
**Letter Of Acceptance**
[Attached]

**Capstone Business Credit, LLC**
*1350 Avenue of the Americas, 24th Floor*
*New York, NY 10019*
*Tel: 212 755 3636*
*Fax: 212 755 6833*
*e-mail: crice@capstonetrade.com*

Mr. John Doe
Controller
Name of Company
Address.
City, State, Zip

RE:

PO Number    PO Date    Invoice Number    Invoice Date    Terms    Invoice Amt.

Dear Mr. Doe,

We are a finance company and assignee for the above named entity, providing funding during a period of rapid growth and expansion. Attached is a letter from that company authorizing all payments to be sent directly and solely to Capstone Business Credit, LLC.

By signing at the bottom and returning this letter to us by fax, you will acknowledge to us both your understanding of the foregoing, and the correctness of the above invoice numbers pursuant to the terms immediately above your signature.

Sincerely,

Joseph F. Ingrassia
Managing Member

The undersigned acknowledges to Capstone Business Credit, LLC that the above invoice amounts are correct and owing: that the work and/or merchandise has been completed and accepted and that there are not now nor will there be, any setoffs beyond 10% of the invoice amount(s); and that there will be no claims against the funds paid. Neither Capstone nor its agents have made any representations except as herein set forth. This estoppel is not subject to modification. New York law shall apply hereto.

Authorized Signature _____ Title _____

*Capstone Business Credit, LLC*                    C-1
BN 1154695v4

## SCHEDULE A
## TO FACTORING AGREEMENT

### Special Covenants

1.  No Material Change or Change of Control. Absent prior written consent from Factor, Company shall not (a) make or permit any material change in the nature of its business as carried on as of the Effective Date, or (b) allow to occur a Change of Control.

"Change of Control" shall mean, on or after the Effective Date, that any change in the composition of Company's stockholders as of the Effective Date shall occur which would result in any stockholder or group acquiring 20% or more of any class of the capital stock of Company, or that any Person or entity (or group of Persons or entities acting in concert) shall otherwise acquire, directly or indirectly, the power to elect a majority of the Board of Directors of Company or otherwise direct the management or affairs of Company by obtaining proxies, entering into voting agreements or trusts, acquiring securities or otherwise.

2.  Negative Pledge. Company shall not create, incur, assume or permit to exist any lien upon or with respect to any Collateral now owned or hereafter acquired by Company, except for liens in favor of Lender or Factor.

'L'

UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO (Name and Address)       17884 CAPSTONE BUSIN

UCC Direct Services         9254347
P.O. Box 29071
Glendale, CA 91209-9071      NJNJ

2005 SEP 14 ☐ 5:00

23814851

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| D'Annunzio Showcase Dealers, Inc. | | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 60 G Commerce Way | CITY Totowa | | STATE NJ | POSTAL CODE 07512 | COUNTRY |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION NJ | 1g. ORGANIZATIONAL ID #, if any | [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Capstone Business Credit, LLC | | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS 1350 Avenue of the Americas 24th Floor | CITY New York | | STATE NY | POSTAL CODE 10019 | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral

Collateral-All assets of the Debtor.  NOTICE - PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH SECURED PARTY'S RIGHTS BY SUCH ENCUMBRANCER. IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

⌐/ PAGE ATTACHMENT

S 174/685
J 3177360

| 5. ALTERNATIVE DESIGNATION (if applicable) | | [ ] LESSEE/LESSOR | [ ] CONSIGNEE/CONSIGNOR | [ ] BAILEE/BAILOR | [ ] SELLER/BUYER | [ ] AG. LIEN | [ ] NON-UCC FILING |
|---|---|---|---|---|---|---|---|
| 6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | [ ] All Debtors | [ ] Debtor 1 | [ ] Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | | |
| 9254347 | | | | DSD | | | |

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9 NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| 9a ORGANIZATION'S NAME | D'Annunzio Showcase Dealers, Inc. |
| OR 9b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |

**10 MISCELLANEOUS**

9254347-NJ-0

17884 CAPSTONE BUSIN

DSD

File with: New Jersey

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11 ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 11b INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 11c MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 11d SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e TYPE OF ORGANIZATION | 11f JURISDICTION OF ORGANIZATION | 11g ORGANIZATIONAL ID #, if any | NONE |

**12 [X] ADDITIONAL SECURED PARTY'S or ASSIGNOR S/P's NAME - insert only one name (12a or 12b)**

| 12a ORGANIZATION'S NAME | Capstone Capital Group I, LLC | | | |
|---|---|---|---|---|
| OR 12b INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 12c MAILING ADDRESS 1350 Avenue of the Americas 24th Floor | CITY New York | | STATE NY | POSTAL CODE 10019 | COUNTRY |

**13 This FINANCING STATEMENT covers [ ] timber to be cut or [ ] as-extracted collateral or is filed as a [ ] fixture filing.**

**16. Additional collateral description**

**14 Description of real estate**

**15 Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest).**

**17 Check only if applicable and check only one box.**
Debtor is a [ ] Trust or [ ] Trustee acting with respect to property held in trust or [ ] Decedent's Estate

**18. Check only if applicable and check only one box**
[ ] Debtor is a TRANSMITTING UTILITY
[ ] Filed in connection with a Manufactured-Home Transaction – effective 30 years
[ ] Filed in connection with a Public-Finance Transaction – effective 30 years

Prepared by UCC-Direct Services, Inc., P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

'M'

## GUARANTEE

1.      The undersigned (each a "Guarantor" and collectively, the "Guarantors"), for good and valuable consideration and to induce Capstone Capital Group I, LLC, a Delaware limited liability company (the "Lender") to lend to D'Annunzio Showcase Dealers, Inc., a New Jersey corporation ("Borrower") pursuant to a Purchase Order Financing Agreement between Borrower and the Lender of even date herewith (together all other documents executed in connection therewith, as each such agreement may be amended from time to time, shall hereinafter be referred to as the "Loan Documents"), hereby jointly and severally (a) makes and affirms to the Lender each of the representations and warranties made by Borrower in the Loan Documents, and (b) irrevocably and unconditionally guarantees to the Lender the faithful and timely performance and satisfaction of all of the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Loan Documents, including without limitation the payment of all amounts when due under such agreements, including interest that, but for the filing of a petition under the United States Bankruptcy Code with respect to Borrower, would have accrued on any such obligations, and attorneys' fees (collectively, the "Guaranteed Obligations"). If Borrower fails at any time promptly and fully to perform or satisfy any of such obligations, covenants or conditions, Guarantors shall perform or satisfy the same as provided therein. The Lender may at any time require Guarantors to perform or satisfy any such obligation, covenant or condition that Borrower has not performed or satisfied by giving notice to such effect to Guarantors in any manner prescribed for the giving of notices to Borrower under the Loan Documents, addressed to Guarantors at the address below.

The obligations of Guarantors hereunder are primary and direct, and are in addition to, and independent of, the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Loan Documents. Guarantors hereby waive all rights that they might otherwise have to require the Lender to commence any proceeding against Borrower or the Collateral (as defined in the Loan Documents) or to exhaust the Lender's remedies against Borrower before seeking to enforce this Guarantee.

The validity of this Guarantee and the obligations of Guarantors hereunder shall in no manner be terminated, impaired or in any way modified or affected by reason of:

(a)      the enforcement by the Lender against Borrower of any of the Lender's rights or remedies under the Loan Documents;

(b)      the granting to the Lender, under the Loan Documents or otherwise, of any collateral security for the performance or satisfaction of Borrower's obligations, covenants or conditions under the Loan Documents, any action of the Lender to proceed against or realize upon such collateral security, or an impairment or release of any such collateral security;

(c)      commencement by or against Borrower of any bankruptcy or other insolvency proceeding or any stay, discharge or other relief granted or issued thereunder;

(d)      any extension of time or other indulgence or forbearance by the Lender, or an amendment, modification, renewal or extension of any Loan Document or waiver of any of the obligations, covenants or conditions of Borrower under any Loan Document; or

(e)     any other defense, set-off, counterclaim or discharge that might otherwise be available to Borrower or any Guarantor.

2.     Notwithstanding the foregoing, the liability of each Guarantor hereunder is limited to the lesser of the following amounts minus, in either case, one dollar ($1):

(a)     The lowest amount which would render this Guarantee a fraudulent conveyance under the Uniform Fraudulent Transfer Act, or other similar or analogous law or statute of the appropriate jurisdiction; and

(b)     The lowest amount which would render this Guarantee a fraudulent transfer under Section 548 of the Bankruptcy Code of 1978, as amended.

It is presumed that the liability of each Guarantor hereunder is equal to the amount of the Guaranteed Obligations.  Therefore, in the event that any Guarantor, or successor-in-interest thereof ("Guaranty Opponent"), shall claim that the amount of its liability hereunder is less than the amount of the Guaranteed Obligations hereunder, the burden of proof with respect to the amount of such liability shall rest with such Guaranty Opponent, in light of the fact that the information concerning and circumstances of the financial condition of such Guarantor is more readily available to and under the control of such Guaranty Opponent.

3.     To secure the payment and performance in full of the Guarantor's obligations hereunder, each Guarantor grants to the Lender a security interest in all of Guarantor's now owned and hereafter acquired personal property and fixtures, and proceeds thereof (including proceeds of proceeds), including without limitation: Accounts; Chattel Paper; Goods, including Inventory and Equipment; Instruments; Investment Property; Documents; and General Intangibles (as each is defined in Article 9 of the Uniform Commercial Code in effect from time to time in the State of New York).

4.     Each Guarantor hereby represents and warrants to the Lender that:

(a)     Such Guarantor has full power and authority to make this Guarantee and to assume and perform its or his/her obligations hereunder.  This Guarantee has been duly executed and delivered by each Guarantor, and is a legally valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except to the extent such enforceability may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and equitable principles limiting the availability of certain remedies.

(b)     If it is a registered entity:

(i)     It is organized, validly existing, and in good standing under the laws of the jurisdiction of its formation;

(ii)     It has the power and authority and all governmental licenses, authorizations, consents, and approvals to execute, deliver, and perform its obligations hereunder;

(iii)     This Guarantee has been authorized by all necessary action by Guarantor, and does not and will not:

(1)     Contravene the terms of Guarantor's organizational documents;

(2)     Conflict with or result in any breach or contravention of, any contractual obligation to which Guarantor is a party or any order, injunction, writ, or decree of any governmental authority to which Guarantor or Guarantor's properties are subject;

(3)     Violate any law, rule, or regulation of any governmental authority.

(c)     There are no actions, suits, proceedings, claims, or disputes pending, or, to the best knowledge of Guarantor, threatened or contemplated, at law, in equity, in arbitration, or before any governmental authority, against Guarantor or any of Guarantor's properties which purport to affect or pertain to this Guarantee or any of the transactions contemplated hereby or thereby.

5.     Each Guarantor waives:

(a)     ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING BY CONTRACT, STATUTE OR BY OPERATION OF LAW.

(b)     Notice of (i) any adverse change in the financial condition of Borrower; (ii) any default in the performance of the Guaranteed Obligations; and (iii) any other notice to which such Guarantor might be entitled.

(c)     Any defense or claim arising out of (i) the release of any collateral securing the Guaranteed Obligations; or (ii) any fact that may increase such Guarantor's risk hereunder.

(d)     Any claim of usury.

(e)     Any other defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully paid) of Borrower including any defense arising from any statute of limitations.

(f)     Any defense based on the invalidity, irregularity, or unenforceability of all or any part of the Guaranteed Obligations or any other circumstance which might constitute a defense of a guarantor.

(g)     Any claim or defense based on (i) the validity, legality or enforceability in whole or in part of the Guaranteed Obligations; (ii) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement relating to Guaranteed Obligations, (c) any setoff, counterclaim or any circumstances which might constitute a defense or discharge of Guarantor.

(h)     Any lack of power or authority of Borrower.

(i)    Any defense to payment hereunder resulting from Lender's releasing Borrower or any other obligor owing the Guaranteed Obligations from their obligation to pay the Guaranteed Obligations, as well as Lender's failure to give such Guarantor notice thereof.

6.    Each Guarantor waives any right to revoke the Guarantee as to future Guaranteed Obligations. If, contrary to the express intent of this agreement, any such revocation is effective, (a) it shall not be effective until written notice thereof has been actually received by any officer of Lender; (b) it shall not apply to any Guaranteed Obligations in existence on such date (including any subsequent continuation, extension, or renewal thereof); (c) it shall not apply to any Guaranteed Obligations made or created after such date pursuant to a commitment of Lender which was, or is believed in good faith by Lender to be, in existence on the date of such revocation; (d) no payment by any other Guarantor or Borrower, or from any other source, prior to the date of such revocation shall reduce the obligations of Guarantor hereunder; and (e) any payment by Borrower or from any source other than Guarantor, subsequent to the date of such revocation, shall first be applied to that portion of the Guaranteed Obligations, if any, as to which the revocation by Guarantor is effective and, to the extent so applied, shall not reduce the obligations of Guarantor hereunder.

7.    Without notice to Guarantors and without affecting or impairing the obligations of Guarantors hereunder, Lender may, compromise or settle, extend the period of duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, release any obligor of the Guaranteed Obligations or may grant other indulgences to Borrower in respect thereof, or may amend the Loan Documents, or may enforce, exchange, release, or waive any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations.

8.    All present and future indebtedness of Borrower to any Guarantor is subordinated to the payment of the Guaranteed Obligations. In this regard, no payment of any kind whatsoever shall be made with respect to such indebtedness until all Guaranteed Obligations have been indefeasibly paid in full. Any payment received by any Guarantor in respect of such indebtedness shall be held by any Guarantor as trustee for Lender, and promptly paid over to Lender on account of the Guaranteed Obligations but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guarantee. Upon request by Lender, any notes or other instruments now or hereafter evidencing such indebtedness of Borrower to any Guarantor, shall be marked with a legend that the same are subject to this Guarantee or shall be delivered to Lender for safekeeping.

9.    If the Lender prevails in any action, suit or other proceeding against any Guarantor to enforce this Guarantee, Guarantors jointly and severally shall pay to the Lender and indemnify the Lender for the Lender's reasonable attorneys' fees and disbursements so incurred. All rights of the Lender hereunder shall inure to the benefit of the Lender and its successors and assigns, and shall be binding upon Guarantors and their heirs, distributees, legal representatives, successors and assigns. This Guarantee shall be governed by, and interpreted and enforced in accordance with, the laws of the State of New York without regard to principles of choice of law or conflicts of laws. Guarantors hereby irrevocably consent and submit to the same provisions relating to arbitration and remedies, and the jurisdiction of the same courts, the same venue and

the same manner of service of process, to which Borrower consents to and submits in the Loan Documents.

[execution on next page]

IN WITNESS WHEREOF, the undersigned have duly executed this Guarantee as of March 8, 2007.

D'ANNUNZIO DISTRIBUTION, INC.

By: _____
Name:  Arthur D'Annunzio
Title:  President

Address:

60 G Commerce Way
Totowa, NY 07512

'N'

## GUARANTEE

1.      The undersigned (each a "Guarantor" and collectively, the "Guarantors"), for good and valuable consideration and to induce Capstone Business Credit, LLC, a Delaware limited liability company (the "Lender") to factor the accounts receivable and otherwise make financial accommodations to D'Annunzio Showcase Dealers, Inc., a New Jersey corporation ("Borrower") pursuant to a Discount Factoring Agreement between Borrower and the Lender of even date herewith (together all other documents executed in connection therewith, as each such agreement may be amended from time to time, shall hereinafter be referred to as the "Financing Documents"), hereby jointly and severally (a) makes and affirms to the Lender each of the representations and warranties made by Borrower in the Financing Documents; and (b) irrevocably and unconditionally guarantees to the Lender the faithful and timely performance and satisfaction of all of the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Financing Documents, including without limitation the payment of all amounts when due under such agreements, including interest that, but for the filing of a petition under the United States Bankruptcy Code with respect to Borrower, would have accrued on any such obligations, and attorneys' fees (collectively, the "Guaranteed Obligations"). If Borrower fails at any time promptly and fully to perform or satisfy any of such obligations, covenants or conditions, Guarantors shall perform or satisfy the same as provided therein. The Lender may at any time require Guarantors to perform or satisfy any such obligation, covenant or condition that Borrower has not performed or satisfied by giving notice to such effect to Guarantors in any manner prescribed for the giving of notices to Borrower under the Financing Documents, addressed to Guarantors at the address below.

The obligations of Guarantors hereunder are primary and direct, and are in addition to, and independent of, the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Financing Documents. Guarantors hereby waive all rights that they might otherwise have to require the Lender to commence any proceeding against Borrower or the Collateral (as defined in the Financing Documents) or to exhaust the Lender's remedies against Borrower before seeking to enforce this Guarantee.

The validity of this Guarantee and the obligations of Guarantors hereunder shall in no manner be terminated, impaired or in any way modified or affected by reason of:

        (a)      the enforcement by the Lender against Borrower of any of the Lender's rights or remedies under the Financing Documents;

        (b)      the granting to the Lender, under the Financing Documents or otherwise, of any collateral security for the performance or satisfaction of Borrower's obligations, covenants or conditions under the Financing Documents, any action of the Lender to proceed against or realize upon such collateral security, or an impairment or release of any such collateral security;

        (c)      commencement by or against Borrower of any bankruptcy or other insolvency proceeding or any stay, discharge or other relief granted or issued thereunder;

(d)     any extension of time or other indulgence or forbearance by the Lender, or an amendment, modification, renewal or extension of any Financing Document or waiver of any of the obligations, covenants or conditions of Borrower under any Financing Document; or

(e)     any other defense, set-off, counterclaim or discharge that might otherwise be available to Borrower or any Guarantor.

2.     Notwithstanding the foregoing, the liability of each Guarantor hereunder is limited to the lesser of the following amounts minus, in either case, one dollar ($1):

(a)     The lowest amount which would render this Guarantee a fraudulent conveyance under the Uniform Fraudulent Transfer Act, or other similar or analogous law or statute of the appropriate jurisdiction; and

(b)     The lowest amount which would render this Guarantee a fraudulent transfer under Section 548 of the Bankruptcy Code of 1978, as amended.

It is presumed that the liability of each Guarantor hereunder is equal to the amount of the Guaranteed Obligations.  Therefore, in the event that any Guarantor, or successor-in-interest thereof ("Guaranty Opponent"), shall claim that the amount of its liability hereunder is less than the amount of the Guaranteed Obligations hereunder, the burden of proof with respect to the amount of such liability shall rest with such Guaranty Opponent, in light of the fact that the information concerning and circumstances of the financial condition of such Guarantor is more readily available to and under the control of such Guaranty Opponent.

3.     To secure the payment and performance in full of the Guarantor's obligations hereunder, each Guarantor grants to the Lender a security interest in all of Guarantor's now owned and hereafter acquired personal property and fixtures, and proceeds thereof (including proceeds of proceeds), including without limitation: Accounts; Chattel Paper; Goods, including Inventory and Equipment; Instruments; Investment Property; Documents; and General Intangibles (as each is defined in Article 9 of the Uniform Commercial Code in effect from time to time in the State of New York).

4.     Each Guarantor hereby represents and warrants to the Lender that:

(a)     Such Guarantor has full power and authority to make this Guarantee and to assume and perform its or his/her obligations hereunder.  This Guarantee has been duly executed and delivered by each Guarantor, and is a legally valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except to the extent such enforceability may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and equitable principles limiting the availability of certain remedies.

(b)     If it is a registered entity:

(i)     It is organized, validly existing, and in good standing under the laws of the jurisdiction of its formation;

(ii)     It has the power and authority and all governmental licenses, authorizations, consents, and approvals to execute, deliver, and perform its obligations hereunder;

(iii)    This Guarantee has been authorized by all necessary action by Guarantor, and does not and will not:

(1)     Contravene the terms of Guarantor's organizational documents;

(2)     Conflict with or result in any breach or contravention of, any contractual obligation to which Guarantor is a party or any order, injunction, writ, or decree of any governmental authority to which Guarantor or Guarantor's properties are subject;

(3)     Violate any law, rule, or regulation of any governmental authority.

(c)     There are no actions, suits, proceedings, claims, or disputes pending, or, to the best knowledge of Guarantor, threatened or contemplated, at law, in equity, in arbitration, or before any governmental authority, against Guarantor or any of Guarantor's properties which purport to affect or pertain to this Guarantee or any of the transactions contemplated hereby or thereby.

5.     Each Guarantor waives:

(a)     ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING BY CONTRACT, STATUTE OR BY OPERATION OF LAW.

(b)     Notice of (i) any adverse change in the financial condition of Borrower; (ii) any default in the performance of the Guaranteed Obligations; and (iii) any other notice to which such Guarantor might be entitled.

(c)     Any defense or claim arising out of (i) the release of any collateral securing the Guaranteed Obligations, or (ii) any fact that may increase such Guarantor's risk hereunder.

(d)     Any claim of usury.

(e)     Any other defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully paid) of Borrower including any defense arising from any statute of limitations.

(f)     Any defense based on the invalidity, irregularity, or unenforceability of all or any part of the Guaranteed Obligations or any other circumstance which might constitute a defense of a guarantor.

(g)     Any claim or defense based on (i) the validity, legality or enforceability in whole or in part of the Guaranteed Obligations, (ii) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement relating to Guaranteed Obligations, (c) any setoff, counterclaim or any circumstances which might constitute a defense or discharge of Guarantor.

(h)     Any lack of power or authority of Borrower.

(i)     Any defense to payment hereunder resulting from Lender's releasing Borrower or any other obligor owing the Guaranteed Obligations from their obligation to pay the Guaranteed Obligations, as well as Lender's failure to give such Guarantor notice thereof.

6.     Each Guarantor waives any right to revoke the Guarantee as to future Guaranteed Obligations. If, contrary to the express intent of this agreement, any such revocation is effective, (a) it shall not be effective until written notice thereof has been actually received by any officer of Lender; (b) it shall not apply to any Guaranteed Obligations in existence on such date (including any subsequent continuation, extension, or renewal thereof); (c) it shall not apply to any Guaranteed Obligations made or created after such date pursuant to a commitment of Lender which was, or is believed in good faith by Lender to be, in existence on the date of such revocation; (d) no payment by any other Guarantor or Borrower, or from any other source, prior to the date of such revocation shall reduce the obligations of Guarantor hereunder; and (e) any payment by Borrower or from any source other than Guarantor, subsequent to the date of such revocation, shall first be applied to that portion of the Guaranteed Obligations, if any, as to which the revocation by Guarantor is effective and, to the extent so applied, shall not reduce the obligations of Guarantor hereunder.

7.     Without notice to Guarantors and without affecting or impairing the obligations of Guarantors hereunder, Lender may, compromise or settle, extend the period of duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, release any obligor of the Guaranteed Obligations or may grant other indulgences to Borrower in respect thereof, or may amend the Financing Documents, or may enforce, exchange, release, or waive any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations.

8.     All present and future indebtedness of Borrower to any Guarantor is subordinated to the payment of the Guaranteed Obligations. In this regard, no payment of any kind whatsoever shall be made with respect to such indebtedness until all Guaranteed Obligations have been indefeasibly paid in full. Any payment received by any Guarantor in respect of such indebtedness shall be held by any Guarantor as trustee for Lender, and promptly paid over to Lender on account of the Guaranteed Obligations but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guarantee. Upon request by Lender, any notes or other instruments now or hereafter evidencing such indebtedness of Borrower to any Guarantor, shall be marked with a legend that the same are subject to this Guarantee or shall be delivered to Lender for safekeeping.

9.     If the Lender prevails in any action, suit or other proceeding against any Guarantor to enforce this Guarantee, Guarantors jointly and severally shall pay to the Lender and indemnify the Lender for the Lender's reasonable attorneys' fees and disbursements so incurred. All rights of the Lender hereunder shall inure to the benefit of the Lender and its successors and assigns, and shall be binding upon Guarantors and their heirs, distributees, legal representatives, successors and assigns. This Guarantee shall be governed by, and interpreted and enforced in accordance with, the laws of the State of New York without regard to principles of choice of law or conflicts of laws. Guarantors hereby irrevocably consent and submit to the same provisions

relating to arbitration and remedies, and the jurisdiction of the same courts, the same venue and the same manner of service of process, to which Borrower consents to and submits in the Financing Documents.

[execution on next page]

IN WITNESS WHEREOF, the undersigned have duly executed this Guarantee as of March 8, 2007.

D'ANNUNZIO DISTRIBUTION, INC.

By: _____

Name:  Arthur D'Annunzio
Title:  President

Address:

60 G Commerce Way
Totowa, NY 07512



## GUARANTEE

1.  The undersigned (each a "Guarantor"), for good and valuable consideration and to induce Capstone Capital Group I, LLC, a Delaware limited liability company (the "Lender") to lend to D'Annunzio Showcase Dealers, Inc., a New Jersey corporation ("Borrower") pursuant to a Purchase Order Financing Agreement between Borrower and the Lender of even date herewith (together all other documents executed in connection therewith, as each such agreement may be amended from time to time, shall hereinafter be referred to as the "Loan Documents"), hereby jointly and severally (a) makes and affirms to the Lender each of the representations and warranties made by Borrower in the Loan Documents, and (b) irrevocably and unconditionally guarantees to the Lender the faithful and timely performance and satisfaction of all of the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Loan Documents, including without limitation the payment of all amounts when due under such agreements, including interest that, but for the filing of a petition under the United States Bankruptcy Code with respect to Borrower, would have accrued on any such obligations, and attorneys'-fees (collectively, the "Guaranteed Obligations"). If Borrower fails at any time promptly and fully to perform or satisfy any of such obligations, covenants or conditions, Guarantors shall perform or satisfy the same as provided therein. The Lender may at any time require Guarantors to perform or satisfy any such obligation, covenant or condition that Borrower has not performed or satisfied by giving notice to such effect to Guarantors in any manner prescribed for the giving of notices to Borrower under the Loan Documents, addressed to Guarantors at the address below.

The obligations of Guarantors hereunder are primary and direct, and are in addition to, and independent of, the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Loan Documents. Guarantors hereby waive all rights that they might otherwise have to require the Lender to commence any proceeding against Borrower or the Collateral (as defined in the Loan Documents) or to exhaust the Lender's remedies against Borrower before seeking to enforce this Guarantee.

The validity of this Guarantee and the obligations of Guarantors hereunder shall in no manner be terminated, impaired or in any way modified or affected by reason of:

(a)  the enforcement by the Lender against Borrower of any of the Lender's rights or remedies under the Loan Documents;

(b)  the granting to the Lender, under the Loan Documents or otherwise, of any collateral security for the performance or satisfaction of Borrower's obligations, covenants or conditions under the Loan Documents, any action of the Lender to proceed against or realize upon such collateral security, or an impairment or release of any such collateral security;

(c)  commencement by or against Borrower of any bankruptcy or other insolvency proceeding or any stay, discharge or other relief granted or issued thereunder;

(d)  any extension of time or other indulgence or forbearance by the Lender, or an amendment, modification, renewal or extension of any Loan Document or waiver of any of the obligations, covenants or conditions of Borrower under any Loan Document; or

(e)    any other defense, set-off, counterclaim or discharge that might otherwise be available to Borrower or any Guarantor.

2.    Notwithstanding the foregoing, the liability of each Guarantor hereunder is limited to the lesser of the following amounts minus, in either case, one dollar ($1):

(a)    The lowest amount which would render this Guarantee a fraudulent conveyance under the Uniform Fraudulent Transfer Act, or other similar or analogous law or statute of the appropriate jurisdiction; and

(b)    The lowest amount which would render this Guarantee a fraudulent transfer under Section 548 of the Bankruptcy Code of 1978, as amended.

It is presumed that the liability of each Guarantor hereunder is equal to the amount of the Guaranteed Obligations. Therefore, in the event that any Guarantor, or successor-in-interest thereof ("Guaranty Opponent"), shall claim that the amount of its liability hereunder is less than the amount of the Guaranteed Obligations hereunder, the burden of proof with respect to the amount of such liability shall rest with such Guaranty Opponent, in light of the fact that the information concerning and circumstances of the financial condition of such Guarantor is more readily available to and under the control of such Guaranty Opponent.

3.    To secure the payment and performance in full of the Guarantor's obligations hereunder, each Guarantor grants to the Lender a security interest in all of Guarantor's now owned and hereafter acquired personal property and fixtures, and proceeds thereof (including proceeds of proceeds), including without limitation: Accounts; Chattel Paper; Goods, including Inventory and Equipment; Instruments; Investment Property; Documents; and General Intangibles (as each is defined in Article 9 of the Uniform Commercial Code in effect from time to time in the State of New York).

4.    Each Guarantor hereby represents and warrants to the Lender that:

(a)    Such Guarantor has full power and authority to make this Guarantee and to assume and perform its or his/her obligations hereunder. This Guarantee has been duly executed and delivered by each Guarantor, and is a legally valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except to the extent such enforceability may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and equitable principles limiting the availability of certain remedies.

(b)    If it is a registered entity:

(i)    It is organized, validly existing, and in good standing under the laws of the jurisdiction of its formation;

(ii)    It has the power and authority and all governmental licenses, authorizations, consents, and approvals to execute, deliver, and perform its obligations hereunder;

(iii)   This Guarantee has been authorized by all necessary action by Guarantor, and does not and will not:

(1)   Contravene the terms of Guarantor's organizational documents;

(2)   Conflict with or result in any breach or contravention of any contractual obligation to which Guarantor is a party or any order, injunction, writ, or decree of any governmental authority to which Guarantor or Guarantor's properties are subject;

(3)   Violate any law, rule, or regulation of any governmental authority.

(e)   There are no actions, suits, proceedings, claims, or disputes pending, or to the best knowledge of Guarantor, threatened or contemplated, at law, in equity, in arbitration, or before any governmental authority, against Guarantor or any of Guarantor's properties which purport to affect or pertain to this Guarantee or any of the transactions contemplated hereby or thereby.

5.   Each Guarantor waives:

(a)   ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING BY CONTRACT, STATUTE OR BY OPERATION OF LAW.

(b)   Notice of (i) any adverse change in the financial condition of Borrower; (ii) any default in the performance of the Guaranteed Obligations; and (iii) any other notice to which such Guarantor might be entitled.

(c)   Any defense or claim arising out of (i) the release of any collateral securing the Guaranteed Obligations, or (ii) any fact that may increase such Guarantor's risk hereunder.

(d)   Any claim of usury.

(e)   Any other defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully paid) of Borrower including any defense arising from any statute of limitations.

(f)   Any defense based on the invalidity, irregularity, or unenforceability of all or any part of the Guaranteed Obligations or any other circumstance which might constitute a defense of a guarantor.

(g)   Any claim or defense based on (i) the validity, legality or enforceability in whole or in part of the Guaranteed Obligations, (ii) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement relating to Guaranteed Obligations, (c) any setoff, counterclaim or any circumstances which might constitute a defense or discharge of Guarantor.

(h)   Any lack of power or authority of Borrower.

3

(i)     Any defense to payment hereunder resulting from Lender's releasing Borrower or any other obligor owing the Guaranteed Obligations from their obligation to pay the Guaranteed Obligations, as well as Lender's failure to give such Guarantor notice thereof.

6.     Each Guarantor waives any right to revoke the Guarantee as to future Guaranteed Obligations. If, contrary to the express intent of this agreement, any such revocation is effective, (a) it shall not be effective until written notice thereof has been actually received by any officer of Lender; (b) it shall not apply to any Guaranteed Obligations in existence on such date (including any subsequent continuation, extension, or renewal thereof); (c) it shall not apply to any Guaranteed Obligations made or created after such date pursuant to a commitment of Lender which was, or is believed in good faith by Lender to be, in existence on the date of such revocation; (d) no payment by any other Guarantor or Borrower, or from any other source, prior to the date of such revocation shall reduce the obligations of Guarantor hereunder; and (e) any payment by Borrower or from any source other than Guarantor, subsequent to the date of such revocation, shall first be applied to that portion of the Guaranteed Obligations, if any, as to which the revocation by Guarantor is effective and, to the extent so applied, shall not reduce the obligations of Guarantor hereunder.

7.     Without notice to Guarantors and without affecting or impairing the obligations of Guarantors hereunder, Lender may, compromise or settle, extend the period or duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, release any obligor of the Guaranteed Obligations or may grant other indulgences to Borrower in respect thereof, or may amend the Loan Documents, or may enforce, exchange, release, or waive any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations.

8.     All present and future indebtedness of Borrower to any Guarantor is subordinated to the payment of the Guaranteed Obligations. In this regard, no payment of any kind whatsoever shall be made with respect to such indebtedness until all Guaranteed Obligations have been indefeasibly paid in full. Any payment received by any Guarantor in respect of such indebtedness shall be held by any Guarantor as trustee for Lender, and promptly paid over to Lender on account of the Guaranteed Obligations but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guarantee. Upon request by Lender, any notes or other instruments now or hereafter evidencing such indebtedness of Borrower to any Guarantor, shall be marked with a legend that the same are subject to this Guarantee or shall be delivered to Lender for safekeeping.

9.     If the Lender prevails in any action, suit or other proceeding against any Guarantor to enforce this Guarantee, Guarantors jointly and severally shall pay to the Lender and indemnify the Lender for the Lender's reasonable attorneys' fees and disbursements so incurred. All rights of the Lender hereunder shall inure to the benefit of the Lender and its successors and assigns, and shall be binding upon Guarantors and their heirs, distributees, legal representatives, successors and assigns. This Guarantee shall be governed by, and interpreted and enforced in accordance with, the laws of the State of New York without regard to principles of choice of law or conflicts of laws. Guarantors hereby irrevocably consent and submit to the same provisions relating to arbitration and remedies, and the jurisdiction of the same courts, the same venue and

the same manner of service of process, to which Borrower consents to and submits in the Loan Documents.

[execution on next page]

IN WITNESS WHEREOF, the undersigned have duly executed this Guarantee on March 8, 2007.

_____
Arthur D'Annunzio

_____
Philip D'Annunzio



## GUARANTEE

1.     The undersigned (each a "Guarantor"), for good and valuable consideration and to induce Capstone Business Credit, LLC, a Delaware limited liability company (the "Lender") to factor the accounts receivable of, and otherwise make financial accommodations to, D'Annunzio Showcase Dealers, Inc., a New Jersey corporation ("Borrower"), pursuant to a Discount Factoring Agreement between Borrower and the Lender of even date herewith (together all other documents executed in connection therewith, as each such agreement may be amended from time to time, shall hereinafter be referred to as the "Loan Documents"), hereby jointly and severally (a) makes and affirms to the Lender each of the representations and warranties made by Borrower in the Loan Documents, and (b) irrevocably and unconditionally guarantees to the Lender the faithful and timely performance and satisfaction of all of the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Loan Documents, including without limitation the payment of all amounts when due under such agreements, including interest that, but for the filing of a petition under the United States Bankruptcy Code with respect to Borrower, would have accrued on any such obligations, and attorneys' fees (collectively, the "Guaranteed Obligations"). If Borrower fails at any time promptly and fully to perform or satisfy any of such obligations, covenants or conditions, Guarantors shall perform or satisfy the same as provided therein. The Lender may at any time require Guarantors to perform or satisfy any such obligation, covenant or condition that Borrower has not performed or satisfied by giving notice to such effect to Guarantors in any manner prescribed for the giving of notices to Borrower under the Loan Documents, addressed to Guarantors at the address below.

The obligations of Guarantors hereunder are primary and direct, and are in addition to, and independent of, the obligations, covenants and conditions required to be performed or satisfied by Borrower under the Loan Documents. Guarantors hereby waive all rights that they might otherwise have to require the Lender to commence any proceeding against Borrower or the Collateral (as defined in the Loan Documents) or to exhaust the Lender's remedies against Borrower before seeking to enforce this Guarantee.

The validity of this Guarantee and the obligations of Guarantors hereunder shall in no manner be terminated, impaired or in any way modified or affected by reason of:

(a)     the enforcement by the Lender against Borrower of any of the Lender's rights or remedies under the Loan Documents;

(b)     the granting to the Lender, under the Loan Documents or otherwise, of any collateral security for the performance or satisfaction of Borrower's obligations, covenants or conditions under the Loan Documents, any action of the Lender to proceed against or realize upon such collateral security, or an impairment or release of any such collateral security;

(c)     commencement by or against Borrower of any bankruptcy or other insolvency proceeding or any stay, discharge or other relief granted or issued thereunder;

(d)     any extension of time or other indulgence or forbearance by the Lender, or an amendment, modification, renewal or extension of any Loan Document or waiver of any of the obligations, covenants or conditions of Borrower under any Loan Document; or

1

(e)     any other defense, set-off, counterclaim or discharge that might otherwise be available to Borrower or any Guarantor.

2.     Notwithstanding the foregoing, the liability of each Guarantor hereunder is limited to the lesser of the following amounts minus, in either case, one dollar ($1):

(a)     The lowest amount which would render this Guarantee a fraudulent conveyance under the Uniform Fraudulent Transfer Act, or other similar or analogous law or statute of the appropriate jurisdiction; and

(b)     The lowest amount which would render this Guarantee a fraudulent transfer under Section 548 of the Bankruptcy Code of 1978, as amended.

It is presumed that the liability of each Guarantor hereunder is equal to the amount of the Guaranteed Obligations. Therefore, in the event that any Guarantor, or successor-in-interest thereof ("Guaranty Opponent"), shall claim that the amount of its liability hereunder is less than the amount of the Guaranteed Obligations hereunder, the burden of proof with respect to the amount of such liability shall rest with such Guaranty Opponent, in light of the fact that the information concerning and circumstances of the financial condition of such Guarantor is more readily available to and under the control of such Guaranty Opponent.

3.     To secure the payment and performance in full of the Guarantor's obligations hereunder, each Guarantor grants to the Lender a security interest in all of Guarantor's now owned and hereafter acquired personal property and fixtures, and proceeds thereof (including proceeds of proceeds), including without limitation; Accounts; Chattel Paper; Goods, including Inventory and Equipment; Instruments; Investment Property; Documents; and General Intangibles (as each is defined in Article 9 of the Uniform Commercial Code in effect from time to time in the State of New York).

4.     Each Guarantor hereby represents and warrants to the Lender that:

(a)     Such Guarantor has full power and authority to make this Guarantee and to assume and perform its or his/her obligations hereunder. This Guarantee has been duly executed and delivered by each Guarantor, and is a legally valid and binding obligation of each Guarantor, enforceable against each Guarantor in accordance with its terms, except to the extent such enforceability may be subject to bankruptcy, insolvency, reorganization, moratorium or other similar laws now or hereafter in effect relating to creditors' rights generally and equitable principles limiting the availability of certain remedies.

(b)     If it is a registered entity:

(i)     It is organized, validly existing, and in good standing under the laws of the jurisdiction of its formation;

(ii)     It has the power and authority and all governmental licenses, authorizations, consents, and approvals to execute, deliver, and perform its obligations hereunder;

(iii)   This Guarantee has been authorized by all necessary action by Guarantor, and does not and will not:

(1)   Contravene the terms of Guarantor's organizational documents;

(2)   Conflict with or result in any breach or contravention of, any contractual obligation to which Guarantor is a party or any order, injunction, writ, or decree of any governmental authority to which Guarantor or Guarantor's properties are subject;

(3)   Violate any law, rule, or regulation of any governmental authority.

(c)   There are no actions, suits, proceedings, claims, or disputes pending, or, to the best knowledge of Guarantor, threatened or contemplated, at law, in equity, in arbitration, or before any governmental authority, against Guarantor or any of Guarantor's properties which purport to affect or pertain to this Guarantee or any of the transactions contemplated hereby or thereby.

5.   Each Guarantor waives:

(a)   ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING BY CONTRACT, STATUTE OR BY OPERATION OF LAW.

(b)   Notice of (i) any adverse change in the financial condition of Borrower; (ii) any default in the performance of the Guaranteed Obligations; and (iii) any other notice to which such Guarantor might be entitled.

(c)   Any defense or claim arising out of (i) the release of any collateral securing the Guaranteed Obligations, or (ii) any fact that may increase such Guarantor's risk hereunder.

(d)   Any claim of usury.

(e)   Any other defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully paid) of Borrower including any defense arising from any statute of limitations.

(f)   Any defense based on the invalidity, irregularity, or unenforceability of all or any part of the Guaranteed Obligations or any other circumstance which might constitute a defense of a guarantor.

(g)   Any claim or defense based on (i) the validity, legality or enforceability in whole or in part of the Guaranteed Obligations, (ii) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement relating to Guaranteed Obligations, (c) any setoff, counterclaim or any circumstances which might constitute a defense or discharge of Guarantor.

(h)   Any lack of power or authority of Borrower.

(i)     Any defense to payment hereunder resulting from Lender's releasing Borrower or any other obligor owing the Guaranteed Obligations from their obligation to pay the Guaranteed Obligations, as well as Lender's failure to give such Guarantor notice thereof.

6.     Each Guarantor waives any right to revoke the Guarantee as to future Guaranteed Obligations. If, contrary to the express intent of this agreement, any such revocation is effective, (a) it shall not be effective until written notice thereof has been actually received by any officer of Lender; (b) it shall not apply to any Guaranteed Obligations in existence on such date (including any subsequent continuation, extension, or renewal thereof); (c) it shall not apply to any Guaranteed Obligations made or created after such date pursuant to a commitment of Lender which was, or is believed in good faith by Lender to be, in existence on the date of such revocation; (d) no payment by any other Guarantor or Borrower, or from any other source, prior to the date of such revocation shall reduce the obligations of Guarantor hereunder; and (e) any payment by Borrower or from any source other than Guarantor, subsequent to the date of such revocation, shall first be applied to that portion of the Guaranteed Obligations, if any, as to which the revocation by Guarantor is effective and, to the extent so applied, shall not reduce the obligations of Guarantor hereunder.

7.     Without notice to Guarantors and without affecting or impairing the obligations of Guarantors hereunder, Lender may, compromise or settle, extend the period of duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, release any obligor of the Guaranteed Obligations or may grant other indulgences to Borrower in respect thereof, or may amend the Loan Documents, or may enforce, exchange, release, or waive any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations.

8.     All present and future indebtedness of Borrower to any Guarantor is subordinated to the payment of the Guaranteed Obligations. In this regard, no payment of any kind whatsoever shall be made with respect to such indebtedness until all Guaranteed Obligations have been indefeasibly paid in full. Any payment received by any Guarantor in respect of such indebtedness shall be held by any Guarantor as trustee for Lender, and promptly paid over to Lender on account of the Guaranteed Obligations but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guarantee. Upon request by Lender, any notes or other instruments now or hereafter evidencing such indebtedness of Borrower to any Guarantor, shall be marked with a legend that the same are subject to this Guarantee or shall be delivered to Lender for safekeeping.

9.     If the Lender prevails in any action, suit or other proceeding against any Guarantor to enforce this Guarantee, Guarantors jointly and severally shall pay to the Lender and indemnify the Lender for the Lender's reasonable attorneys' fees and disbursements so incurred. All rights of the Lender hereunder shall inure to the benefit of the Lender and its successors and assigns, and shall be binding upon Guarantors and their heirs, distributees, legal representatives, successors and assigns. This Guarantee shall be governed by, and interpreted and enforced in accordance with, the laws of the State of New York without regard to principles of choice of law or conflicts of laws. Guarantors hereby irrevocably consent and submit to the same provisions relating to arbitration and remedies, and the jurisdiction of the same courts, the same venue and

the same manner of service of process, to which Borrower consents to and submits in the Loan Documents.

[execution on next page]

IN WITNESS WHEREOF, the undersigned have duly executed this Guarantee on March 8, 2007.

_____
Arthur D'Annunzio

_____
Philip D'Annunzio



**CAPSTONE CAPITAL GROUP I, LLC**
1350 Avenue of the Americas
24th Floor
New York, New York 10019

April 24, 2009

VIA FACSIMILE AND FEDERAL EXPRESS

D'Annunzio Showcase Dealers, Inc.
60G Commerce Way
Totowa, NJ 07512
Attention: Arthur D'Annunzio

Dear Sirs:

Reference is made to that certain Purchase Order Financing Agreement dated as of March 8, 2007 (the "Financing Agreement") by and between D'Annunzio Showcase Dealers, Inc. ("D'Annunzio Dealers") and Capstone Capital Group I, LLC ("Capstone"). Terms used but not otherwise defined herein shall have the meaning defined in the Financing Agreement.

Notice is hereby given that Events of Default have occurred under Section 7.1 of the Financing Agreement as a result of breaches of the following covenants: Section 2.1.3 (failure to pay Purchase Money Advances before the Due Date), Section 3.1.1 (failure to timely and fully pay Interest on the unpaid balance of Advances), Section 3.2.2 (failure to pay Cash Advance Guarantee Fee), Section 6.2 (failure to maintain required insurance), Section 6.3.1.1 (failure to provide financial statements), Section 6.3.1.2 (failure to provide certified chief financial officer statements), Section 6.3.2 (failure to provide monthly balance sheets), Section 6.3.3.2 (failure to provide proof of payment of federal payroll taxes), Section 6.4.1 (failure to provide access to all premises), Section 6.4.2 (failure to provide access to company records), Section 6.5.1 (failure to execute new consignment agreements for collateral) and Section 6.10.3 (failure to maintain business liability insurance).

Notice is further given that an Event of Default has occurred under Section 7.2 of the Financing Agreement as a result of defaults under (i) that certain Discount Factoring Agreement, dated March 8, 2007 by and between D'Annunzio Dealers and Capstone Business Credit, LLC, (ii) that certain Discount Factoring Agreement, dated October 20, 2006, by and between D'Annunzio Distribution, Inc. and Capstone Business Credit, LLC, and (iii) that certain Purchase Order Financing Agreement, dated October 20, 2006, by and between D'Annunzio Distribution, Inc. and Capstone.

In addition, notwithstanding the foregoing Events of Default, notice is hereby given that, in accordance with Section 10 of the Financing Agreement, the Termination Date occurred on March 7, 2009. In light of the foregoing Events of Default, the unpaid amount due under the Financing Agreement, which totals an aggregate of $3,712,706.48, as of Friday, April 24, 2009, is hereby declared due and payable immediately.

Immediate payment of the amount due, together with all interest and other fees accruing from and after the date hereof should be made to Capstone at 1350 Avenue of the Americas, 24th Floor, New York, NY 10019 or by wire transfer of immediately available funds. Please contact Capstone for an updated payoff amount through the date of payment. If payment is not made by 5:00 p.m. New York City time on May 1, 2009, Capstone intends to exercise its remedies under the Financing Agreement and the other documents securing or evidencing D'Annunzio Dealers' Obligations to Capstone.

Sincerely,

CAPSTONE CAPITAL GROUP I, LLC

By: _____
Name: Joseph F. Ingrassia
Title: Managing Member

'R'

**CAPSTONE BUSINESS CREDIT, LLC**
1350 Avenue of the Americas
24th Floor
New York, New York 10019

April 24, 2009

VIA FACSIMILE AND FEDERAL EXPRESS

D'Annunzio Showcase Dealers, Inc.
60G Commerce Way
Totowa, NJ 07512
Attention: Arthur D'Annunzio

Dear Sirs:

Reference is made to that certain Discount Factoring Agreement dated as of March 8, 2007 (the "Factoring Agreement") by and between D'Annunzio Showcase Dealers, Inc. ("D'Annunzio Dealers") and Capstone Business Credit, LLC ("Capstone"). Terms used but not otherwise defined herein shall have the meaning defined in the Factoring Agreement.

Notice is hereby given that Events of Default have occurred under Section 17.1(c) of the Factoring Agreement by reason of the following: Section 17.1(c)(i) (failure to pay any of the Obligations on the due date), Section 17.1(c)(ii) (breach of representations and warranties, including the representation regarding Solvency of the D'Annunzio Dealers), Section 17.1(c)(iii) (failure to perform, keep or observe any covenant or agreement, including failure to provide annual financial statements under Section 15.1, failure to permit inspection of company records under Section 15.2, failure to permit inspection of company properties under Section 15.3 and failure to deliver instruments to perfect Capstone's first priority security interest under Section 19), Section 17.1(c)(v) (occurrence of material adverse events, including a material adverse effect on Capstone's liens), and Section 17.1(c)(vi) (Solvency). In light of the foregoing, Capstone is hereby terminating the Factoring Agreement in accordance with the provisions of Section 17 of the Factoring Agreement.

Notice is further given that an Event of Default has occurred under Section 17.1(c) of the Factoring Agreement as a result of defaults under that certain Purchase Order Financing Agreement, dated March 8, 2007, by and between D'Annunzio Dealers and Capstone Capital Group I, LLC.

In light of the foregoing, the unpaid amount due under the Factoring Agreement, which totals an aggregate of $550,844.04, as of Friday, April 24, 2009, is hereby declared due and payable immediately.

Immediate payment of the amount due, together with all interest and other fees accruing from and after the date hereof should be made to Capstone at 1350 Avenue of the Americas, 24th Floor, New York, NY 10019 or by wire transfer of immediately available funds. Please contact Capstone for an updated payoff amount through the date of payment. If payment is not made by 5:00 p.m. New York City time on May 1, 2009, Capstone intends to exercise its remedies under the Factoring Agreement and the other documents securing or evidencing the D'Annunzio Dealer's Obligations to Capstone.

Sincerely,

CAPSTONE BUSINESS CREDIT, LLC

By: _____

     Name: Joseph F. Ingrassia
     Title: Managing Member

84370714